## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

PETER FERRARO,      )
           )
     **Plaintiff,**  )
   **v.**       )  **Civil Action No. 2016-0022**
           )
DAVID GAYANICH and CHRIS GAYANICH, )
           )
     **Defendants.** )
_____)

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
  *For Plaintiff*

**Mark Eckard, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant David Gayanich*

**Jeffrey B. C. Moorhead, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant Chris Gayanich*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

  THIS MATTER comes before the Court on Plaintiff's "Motion for Temporary Restraining Order and for Preliminary Injunction." (Dkt. No. 18). For the reasons set forth below, the Court will deny Plaintiff's Motion. Additionally, the Court, *sua sponte*, will dismiss some of Plaintiff's claims in his Second Amended Complaint.

### I.  BACKGROUND AND PROCEDURAL HISTORY

  Plaintiff filed his Complaint in this matter on April 29, 2016 (Dkt. No. 1), and filed his First Amended Complaint as permitted pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure on May 16, 2016 (Dkt. No. 6). The First Amended Complaint sets forth Plaintiff's version of the dispute involving himself, Christiansted Island Hotel, LLC ("CIHLLC"), Defendant

David Gayanich, Defendant Chris Gayanich, and George Secchiaroli. (Dkt. No. 6). On July 27, 2016, Plaintiff filed his "Motion for Temporary Restraining Order and for Preliminary Injunction" ("Motion for TRO and PI") in which he requests the Court to "issue a temporary, preliminary and permanent injunction directing the Defendants to provide Plaintiff Ferraro or his authorized agent access to the books and records of [CIHLLC] and to provide information as to the operation of [CIHLLC] in a timely manner during the pendency of this matter." (Dkt. No. 18 at 7-8). On August 1, 2016, Defendant David Gayanich filed his "Response in Opposition to [Plaintiff's] Motion for Temporary Restraining Order" in which he opposes Plaintiff's Motion primarily because "the Court lacks subject matter jurisdiction over this case." (Dkt. No. 27 at 1). On August 3, 2016, Defendant Chris Gayanich filed his "Opposition to Plaintiff's Motion for Temporary Restraining Order" in which he similarly opposes Plaintiff's Motion primarily on jurisdictional grounds. (Dkt. No. 34 at 2).[1]

On August 3, 2016, Defendant David Gayanich filed his "Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)" (Dkt. No. 32) and his corresponding "Memorandum of Law in Support of [Defendant] David Gayanich's Motion to Dismiss" (Dkt. No. 33), in which Defendant Chris Gayanich subsequently joined.[2] In the Motion to Dismiss and associated Memorandum, Defendants argue that CIHLLC is a necessary party to all of Plaintiff's claims and must be joined

---

[1] The Court held a hearing to discuss Plaintiff's Motion for TRO and PI on August 5, 2016. At the hearing, Plaintiff presented two witnesses and introduced several exhibits. Defendants introduced no evidence, engaged in minimal cross examination of one witness, and presented no argument in response to the merits of Plaintiff's claim for injunctive relief.

[2] Defendant Chris Gayanich filed a "Notice of Joinder" on August 19, 2016, in which he "gives notice that he joins and adopts David Gayanich's Motion to Dismiss for Lack of Jurisdiction dated August 3, 2016 (Docket No. 32) and Memorandum of Law in Support dated August 3, 2016 (Docket No. 33)." (Dkt. No. 40).

as a party. (Dkt. No. 33 at 2). In particular, Defendants assert that under 13 V.I.C. § 1408, it is the limited liability company itself—not its manager or other members—that has the obligation to provide information and records to the members. (*Id.* at 9-10). Defendants further assert that, as the manager of CIHLLC, Defendant Chris Gayanich is merely the agent of CIHLLC, and that CIHLLC is the real party in interest against whom Plaintiff's claims must be directed. (*Id.* at 8-9).[3] Defendants also argue that Plaintiff's Motion should be denied as to Defendant David Gayanich for the additional reason that, as a member of CIHLLC, but not a manager, he does not have possession, custody, or control of CIHLLC's books and records. (Dkt. No. 27 at 2; Dkt. No. 34 at 2). Given that—in Defendants' view—CIHLLC must be joined as a party, Defendants argue that the Court lacks diversity jurisdiction because CIHLLC shares the citizenship of each of its members—including Plaintiff and Defendant David Gayanich. (Dkt. No. 27 at 2; Dkt. No. 34 at 2). Thus, joining CIHLLC as a party—either as a plaintiff or defendant—would necessarily destroy diversity jurisdiction.

Plaintiff filed his "Opposition to Defendant David Gayanich's Motion to Dismiss" on August 23, 2016 (Dkt. No. 41), and Defendant David Gayanich filed his "Reply in Further Support of Motion to Dismiss" on September 6, 2016 (Dkt. No. 42).[4]

On August 4, 2016, Plaintiff filed his "Motion to Amend First Amended Complaint" in order to "more clearly set out the causes of action against Defendants." (Dkt. No. 35). On October

---

[3] While Defendants also argue in their written responses that Defendant Chris Gayanich has provided Plaintiff with the requested information, Defendants abandoned this argument at the hearing.

[4] On September 8, 2016, Defendant Chris Gayanich filed a "Notice of Joinder" in which he "gives notice that he joins and adopts Defendant David Gayanich's Reply to Opposition dated September 6, 2016." (Dkt. No. 43).

12, 2016, the Magistrate Judge granted Plaintiff's Motion to Amend First Amended Complaint, (Dkt. No. 45), and on October 25, 2016, Plaintiff filed his "Second Amended Complaint" (Dkt. No. 46).

Plaintiff's Motion for TRO and PI stems from a larger dispute involving CIHLLC. CIHLLC is a limited liability company created around February 2014 for the purpose of purchasing and operating a hotel on St. Croix—Chenay Bay Resort. (Dkt. No. 46 at 2). Plaintiff alleges that, at the time of its inception, Plaintiff was CIHLLC's only member. (*Id.*). Plaintiff further alleges that, to help acquire the hotel, Defendant David Gayanich and George Secchiaroli invested labor and money into CIHLLC in exchange for ownership interests in the LLC. (*See id.*). However, there is now a dispute regarding the ownership interests of the members. (*Id.* at 2-3). Plaintiff asserts that he owns 45% of the shares, George Secchiaroli owns 10% of the shares, and Defendant David Gayanich owns 45% of the shares. (*Id.* at 2).[5] Conversely, Defendant David Gayanich asserts that he never owned less than 50% of the membership interest; that Plaintiff owns the other 50%; and that George Secchiaroli never owned a 10% membership interest. (Dkt. No. 47 at 2-3). Plaintiff also asserts that—despite Defendant David Gayanich's contention that George Secchiaroli owned no membership interest—Defendant David Gayanich teamed up with George Secchiaroli to use their combined voting power to oust the manager of CIHLLC and replace him with Defendant Chris Gayanich—who is Defendant David Gayanich's grandson. (*Id.* at 4).

Plaintiff alleges that Defendant Chris Gayanich has mismanaged CIHLLC's main asset, the hotel; has violated CIHLLC's Membership Agreement; and has violated Virgin Islands law regarding limited liability companies. (Dkt. No. 18 at 1). In his instant Motion for TRO and PI,

---

[5] Plaintiff also asserts that on March 17, 2016, he gained control over George Secchiaroli's voting rights when George Secchiaroli "executed an[] irrevocable proxy to [Plaintiff] to vote his membership interest." (Dkt. No. 46 at 6).

Plaintiff alleges that he "has repeatedly requested to have access to the books and records of [CIHLLC]" but that "the Manager of the LLC has refused to provide [Plaintiff], through his agent, with access to the books and records of the LLC unless he travels to the Virgin Islands in person or hires a CPA to review them." (*Id.* at 2). Plaintiff also asserts that on May 24, 2016, Plaintiff wrote to Defendant Chris Gayanich, indicating that he had "designated Pablo O'Neill as [Plaintiff's] CPA and requested that [Mr. O'Neill] be allowed to review the records the next day at 10:00 a.m." but that Mr. O'Neill "was not allowed to review the books and records." (*Id.* at 4). In addition to denying his agents access to the books and records of the CIHLLC, Plaintiff asserts that Defendant Chris Gayanich has failed to sufficiently provide Plaintiff with information regarding CIHLLC. Specifically, Plaintiff asserts that he has made the following requests for information, none of which has been properly or adequately answered: a three-page letter dated April 1, 2016 (*id.* at 2); copies of insurance policies and passwords for the hotel bank accounts (*id.* at 3, 5); information concerning the timeshare funds and whether they are lawfully being held in escrow (*id.* at 4); and information regarding the fire that consumed the hotel's kitchen and relevant insurance information (*id.* at 5).[6] Plaintiff requests that the Court "direct[] Defendants to provide [him] or his authorized agent access to the books and records of [CIHLLC] and to provide

---

[6] In a letter dated May 11, 2016, from Plaintiff to Defendant Chris Gayanich, Plaintiff summarizes the informational requests that—as of May 11—Defendant Chris Gayanich had allegedly failed to provide. (Dkt. No. 18-2 at 1). The unanswered informational requests include a copy of the complete lease for the Shoreline Restaurant, a list of employees and payroll for Chaney Bay, copies of insurance policies, and financial information. There is also a letter dated June 9, 2016, from Plaintiff's counsel to Defendant Chris Gayanich asserting that Defendant Chris Gayanich has "continued to keep my client in the dark as to the financial status of the LLC" and asking for immediate information regarding "the status of the restaurant [that was destroyed in the fire] and what insurance the LLC has to cover this loss and what insurance the tenant had in that regard." (Dkt. No. 18-6 at 1).

information as to the operation of [CIHLLC] in a timely manner during the pendency of this matter." (*Id.* at 7-8).

## II.    DISCUSSION

### A.    Applicable Legal Standards

Under Rule 65 of the Federal Rules of Civil Procedure, the Court may grant injunctive relief with a temporary restraining order or a preliminary injunction. *Am. Tel. & Tel. Co. v. Winback & Conserve Prog. Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). Injunctive relief is "an extraordinary remedy . . . which should be granted only in limited circumstances." *Id.* (quoting *Frank's GMC Truck Ctr., Inc. v. GM Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)) (quotations omitted).

To prevail on a motion for a temporary restraining order, the moving party must show each of the following four elements: (1) a reasonable probability of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving parties; and (4) that the public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The same legal standard applies to requests for a preliminary injunction. *Smith v. Litton Loan Servicing, LP*, 2005 WL 289927, at *6 (E.D. Pa. Feb. 4, 2005).

A "district court must consider [the] four elements in determining whether to grant [injunctive relief.]" *Goodwin v. Castille*, 465 F. App'x 157, 160 (3d Cir. 2012). However, "as a practical matter, a 'plaintiff's failure to establish any element in its favor renders [injunctive relief] inappropriate.'" *Wilson v. Spaulding*, 2015 WL 8781510, at *2 (M.D. Pa. Dec. 15, 2015) (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)); *see also Beberman v.*

*United States Dep't of State*, 675 F. App'x 131, 133 (3d Cir. 2017) ("The failure to establish any element renders [injunction relief] inappropriate." (quoting *NutraSweet Co.*, 176 F.3d at 153)) (quotations and ellipses omitted). Thus, "[f]ailure to adequately establish at least a reasonable probability of success on the merits justifies denial of a[] [preliminary] injunction on this ground alone." *Ash v. Cort*, 350 F. Supp. 227, 230 (E.D. Pa. 1972), *aff'd*, 471 F.2d 811 (3d Cir. 1973) (citing *Indus. Elecs. Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964)). The same is true for the ability to establish irreparable harm. *See Beberman*, 675 F. App'x at 133. If, on the other hand, a plaintiff is successful in satisfying the first two factors (reasonable probability of success on the merits and irreparable harm), the court will then consider, to the extent relevant, the second two factors. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 F. App'x 70, 74 (3d Cir. 2004). "The burden lies with the plaintiff to establish every element in its favor, or the grant of [injunction relief] is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

A motion for a temporary restraining order or a preliminary injunction is not an independent basis for federal jurisdiction. Accordingly, if the jurisdiction of the court is challenged, the party moving for injunctive relief has the burden of establishing "at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Indus. Elecs. Corp.*, 330 F.2d at 482 ("Where the challenge is interposed on an application for a preliminary injunction, the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits."); *see also Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 390 (E.D.N.Y. 2016) (quoting *Indus. Elecs. Corp.* and denying the plaintiff's motion for a preliminary injunction and *sua sponte* dismissing the complaint without prejudice

because the plaintiff "failed to establish that the Court has subject matter jurisdiction over this action, or a reasonable probability that such jurisdiction exists").

### B.    Plaintiff's Motion for TRO and PI

As discussed below, the Court finds that Plaintiff has failed to establish a "reasonable probability of ultimate success upon the question of jurisdiction" as to Plaintiff's claim for access to the books and records, which forms the basis for his Motion for TRO and PI. *Indus. Elecs. Corp.*, 330 F.2d at 482. Accordingly, Plaintiff's Motion for injunctive relief will be denied.

Diversity of citizenship is the only basis upon which jurisdiction lies in this Court. (Dkt. No. 46 at 1). However, the law is clear that the citizenship of a limited liability company is based on the citizenship of each of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("[T]he citizenship of an LLC is determined by the citizenship of its members. For complete diversity to exist, all of the LLC's members must be diverse from all parties on the opposing side." (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir. 2008))) (internal quotations and footnotes omitted).

If CIHLLC becomes a party to this litigation, diversity jurisdiction would be destroyed. This is so regardless of whether CIHLLC is joined as a plaintiff or defendant. Because Plaintiff and Defendant David Gayanich are both members of CIHLLC, if CIHLLC is joined as a party a Plaintiff will necessarily have the same citizenship as a Defendant. Thus, the determinative issue is whether CIHLLC is an indispensable party that must be joined. If it is, diversity jurisdiction is destroyed.

Rule 19 of the Federal Rules of Civil Procedure governs whether a party is necessary and indispensable. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). In relevant part, Rule 19 states:

8

**(a) Persons Required to Be Joined if Feasible.**
> **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

. . . .

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> **(2)** the extent to which any prejudice could be lessened or avoided by:
>> **(A)** protective provisions in the judgment;
>> **(B)** shaping the relief; or
>> **(C)** other measures;
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19. Under this analysis, courts first examine whether the absent party must be joined as a "necessary" party under Rule 19(a). *Gen. Refractories Co.*, 500 F.3d at 312. If under Rule 19(a) the absent party is necessary but joinder is infeasible because it would destroy diversity jurisdiction, courts then turn to Rule 19(b) to determine whether the party is also "indispensable." *Id.* If the party is indispensable, "the action cannot go forward." *Id.*

Plaintiff argues that CIHLLC is not an indispensable party to Plaintiff's claim for access to CIHLLC's books and records. (Dkt. No. 41 at 7). Plaintiff first directs the Court's attention to 13 V.I.C. § 1410, which, *inter alia*, allows a limited liability company member to "maintain an

action against a limited liability company or another member for legal or equitable relief" to enforce the member's rights under both the operating agreement and the Virgin Islands Uniform Limited Liability Company Act, 13 V.I.C. §§ 1101-2203 ("ULLCA"), as well as to enforce "the interests of the member, including rights and interests arising independently of the member's relationship to the company." 13 V.I.C. § 1410. Plaintiff asserts that under the ULLCA—specifically, 13 V.I.C. § 1408—he has a statutory right to access CIHLLC's books and records. (Dkt. No. 41 at 7).[7] Accordingly, Plaintiff argues that, under § 1410, he can directly sue Defendants to enforce his rights derived from 13 V.I.C. § 1408. The Court disagrees with Plaintiff's contention that he can directly sue Defendants for access to CIHLLC's books and records.

Plaintiff's reliance on § 1408 and § 1410 is misplaced. First, under § 1408—the provision in which Plaintiff claims his statutory right to access books and records—the duty to provide records and information to limited liability company members falls on the limited liability company—not on any individual member. 13 V.I.C. § 1408 (noting that the "*limited liability company* shall provide members and their agents and attorneys access to its records . . . . [the] *limited liability company* shall furnish to a member . . . information concerning the company's business or affairs") (emphasis added). Thus, Plaintiff has no statutory right to obtain books and records directly from the manager of CIHLLC or another member.

Courts interpreting analogous statutory provisions have reached a similar conclusion. For example, in *Florida Estate Developers, LLC v. Ben Tobin Companies, Ltd.*, 964 So. 2d 238 (Fla. App. 2007), a Florida Court of Appeals ruled that a member of a limited liability company had sufficiently alleged that the limited liability company's manager breached the manager's statutory

---

[7] In relevant part, 13 V.I.C. § 1408 provides that "[a] limited liability company shall provide members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement." 13 V.I.C. § 1408.

duty of loyalty by failing to account to the members of the limited liability company. *Id.* at 240. The court noted, however, that any claim for denial of access to the limited liability company's books and records should be brought against the limited liability company itself rather than the managing member, based on Florida's statutory record keeping provisions. *Id.* at n.1. At the time that *Florida Estate Developers, LLC* was decided, Florida's statutory record keeping provisions— similar to 13 V.I.C. § 1408—stated that the "*limited liability company* shall provide members and their agents and attorneys access to its records" and that the "*limited liability company* shall furnish to a member . . . information concerning the limited liability company's business or affairs." Fla. Stat. Ann. § 608.4101 (repealed Jan. 1. 2015) (emphasis added); *cf. Kasten v. Doral Dental USA, LLC*, 733 N.W.2d 300, 310 (Wis. 2007) (holding that Wisconsin LLC statute "impos[es] a duty upon LLC managers to disclose [company information]" where the statute states that "[m]embers or, if the management of the limited liability company is vested in one or more managers, managers shall provide . . . true and full information of all things affecting the members to any member . . . upon reasonable request of the member") (quoting Wis. Stat. Ann. § 183.0405) (quotations omitted).

Second, under § 1410—the other provision by which Plaintiff asserts he can directly sue Defendants to obtain access to CIHLLC's books and records—a member may directly sue "[the] limited liability company or another member." § 1410. Plaintiff does not allege, however, that Defendant Chris Gayanich is a member of CIHLLC. (Dkt. No. 12-1 at 3-4). Rather, based on Plaintiff's allegations, Defendant Chris Gayanich is a non-member, co-manager of CIHLLC.[8] Under the ULLCA, a "manager" is "a person, whether or not a member of a manger-managed company, who is vested with authority under section 1301 of this chapter." 13 V.I.C. § 1102(j).

---

[8] CIHLLC is a manager-managed limited liability company.

11

Plaintiff offers no authority for the proposition that the Court should interpret § 1410 as providing that a member can directly sue the limited liability company, another member, *and* a non-member manager of a limited liability company, and the Court declines to do so. Thus, § 1410 does not authorize Plaintiff to directly sue Defendant Chris Gayanich.

Plaintiff's argument as to Defendant David Gayanich fares no better. Although Defendant David Gayanich is a member of CIHLLC and thus—in some circumstances—is subject to suit pursuant to § 1410, Plaintiff has not alleged that he is an agent of CIHLLC or has authority to act on behalf of CIHLLC. To the contrary, Section 4.2.1 of CIHLLC's Operating Agreement makes clear that "a Member is not an agent of [CIHLLC] and has no authority to act for [CIHLLC] solely by virtue of being a Member." (Dkt. No. 12-1 at 25). As noted above, under § 1408 the duty to provide limited liability company members with records and information falls on the limited liability company—not on any individual member. 13 V.I.C. § 1408. Likewise, Section 7.2 in the Operating Agreement does not obligate any member to provide records and information to other members, but simply states that "books and records . . . shall be available at [CIHLLC's] principal office for examination by any Member." (Dkt. No. 12-1 at 30). The responsibility for maintaining such records and information falls on the manager. (*Id.* ("The Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of the Company's business.")). Because Defendant David Gayanich has no obligation under either the Operating Agreement or the ULLCA to provide Plaintiff access to CIHLLC's books and records, § 1410 does not support Plaintiff's claim.

In sum, based on the ULLCA and the Operating Agreement, it is clear that Plaintiff has a right to access CIHLLC's books and records. Indeed, neither Defendant argues otherwise.[9]

---

[9] See *supra* footnote 1.

However, Plaintiff's claim lies with CIHLLC—not the non-member manager of CIHLLC or another member.

Plaintiff also argues that, as CIHLLC's manager, Defendant Chris Gayanich is an agent of CIHLLC and, therefore, "any order from this Court may properly be directed to him to fulfill [CIHLLC's] obligation to furnish information to Plaintiff." (Dkt. No. 41 at 12). However, this argument erroneously assumes that Plaintiff can bring suit against Defendant Chris Gayanich to gain access to CIHLLC's books and records. As noted above, Plaintiff has failed to point to any authority supporting this assumption. That Plaintiff has a statutory right to sue CIHLLC for access to books and records does not also mean that Plaintiff has a right to sue CIHLLC's agent. As noted in 13 V.I.C. § 1303(a), "[a] member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 13 V.I.C. § 1303(a). Thus, Defendant Chris Gayanich is not personally liable for providing access to books and records—which is the obligation of CIHLLC under § 1408—simply because he is CIHLLC's agent/manager.

Moreover, to the extent Plaintiff seeks relief against Defendant Chris Gayanich in his official capacity as manager of CIHLLC, Defendant Chris Gayanich's citizenship would be that of CIHLLC. *See Shamrock Holdings of Cal., Inc. v. Arenson*, 2005 WL 400198, at *3 (D. Del. Jan. 27, 2005) (noting that even though a party is generally a citizen of the state of his domicile, "'a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity' and can be a citizen of the states in which the individuals he/she represents are citizens" (quoting *Alexander v. Todman*, 361 F.2d 744, 746 (3d Cir. 1966)); *see also Mortgage Elec. Registration Sys., Inc. v. Estrella*, 390 F.3d 522, 525 (7th Cir. 2004) (analyzing the citizenship of a corporate plaintiff that managed loans on behalf of lenders and stating that "it is the citizenship

of the principal, and not that of the agent, that matters"); *cf. Boat Basin Inv'rs, LLC v. First Am. Stock Transfer, Inc.*, 2003 WL 282144, at *10 (S.D.N.Y. Feb. 7, 2003) (noting that the corporation who was not named as a defendant was a necessary party because two of the named defendants were its agents).

A similar situation was analyzed by a Louisiana Appeals Court in *Sanctuary Capital, LLC ex rel. North Louisiana Bidco, LLC v. Cloud*, 163 So. 3d 890 (La. Ct. App. 2d Cir. 2015). In *Sanctuary Capital*, members of a limited liability company sued the company and its two managers to enforce their rights to access the company's books and records. *Id.* at 893. The operating agreement in *Sanctuary Capital* provided that "[t]he Manager shall keep or cause to be kept complete and accurate books and records of the Company" and that "[t]he books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member." *Id.* at 894. The operating agreement also contained a provision requiring disputes among members to be resolved by arbitration. *Id.* at 892. The court rejected the managers' contention that the suit for books and records was a dispute between members, thus triggering the arbitration clause. *Id.* at 894-95. The court noted that "[a]lthough the company may act only through its managers or, where authorized, its members, the books and records nevertheless are the company's own property." *Id.* at 894. From this, the court reasoned as follows:

> Thus, the right of members to view the company's books and records is fundamentally a question of the rights of the members vis-a-vis the company and not a dispute between members and managers even though the managers may be the parties charged with acting on behalf of the company. Accordingly, this dispute is neither a dispute *between* members nor a true derivative action to enforce the company's rights. The plaintiff members are seeking to enforce their own rights against the company itself.

*Id.* at 894-95 (emphasis in original).

The Court finds *Sanctuary Capital* to be analogous to the situation here. Like the operating agreement in *Sanctuary Capital*, CIHLLC's operating agreement provides that "[t]he Manager shall keep or cause to be kept complete and accurate books and records of the Company" and that "[t]he books and records shall be maintained in accordance with sound accounting practices and shall be available at the Company's principal office for examination by any Member." (Dkt. No. 46-2 at 14). Moreover, there is no dispute that the books and records of CIHLLC are the company's own property. Thus, although CIHLLC can act only through its members and managers, Plaintiff's claim to obtain CIHLLC's books and records is fundamentally a suit by Plaintiff to enforce his own rights against CIHLLC itself.

Finally, Plaintiff asserts that "the Virgin Islands Lieutenant Governor's Office has confirmed that the CIHLLC is not in good standing due to failure to pay taxes." (Dkt. No. 41 at 13; *see also* Dkt. No. 44-1). Citing 13 V.I.C. § 533, Plaintiff asserts that CIHLLC "is unable to commence or maintain any suit in this Territory" and that "Defendants have produced no evidence that [CIHLLC] has paid its annual franchise tax nor that the LLC is a corporation in good standing that could even participate as a third party nominal Defendant." (Dkt. No. 41 at 13). This argument is inapposite.

"When interpreting a statute, the Court looks first to the statute's plain language." *Flagstar Bank, FSB v. Hart*, 2011 WL 1434884, at *3 (D.V.I. Apr. 14, 2011) (citing *In re Visteon Corp.*, 612 F.3d 210, 219 (3d Cir. 2010)). Under 13 V.I.C. § 533(a), no corporation "may *commence* or *maintain* any action in any court if it has not paid its annual franchise tax last due." *Id.* (emphasis added). Plaintiff points to no portion of § 533—and the Court is aware of none—that would prevent a corporation from *defending* against an action or prohibit other entities or individuals from bringing suit against it even if it has failed to timely pay its annual franchise tax. *See Meyers*

*v. Manner Corp.*, 1980 WL 626271, at *1 (D.V.I. Sept. 26, 1980) ("Under the laws of the Virgin Islands, a *plaintiff* corporation's failure to pay its franchise taxes will result in dismissal of the case unless the cause of action sounds in tort, the corporation pays its back taxes, or the corporation is winding up its affairs after dissolution.") (emphasis added).[10] Accordingly, the Court rejects Plaintiff's argument that CIHLLC cannot be an indispensable party to this action because it allegedly is not in good standing for failure to pay taxes.

In view of the foregoing, the Court finds that under the Rule 19 analysis, CIHLLC is an indispensable party to Plaintiff's access to books and records claims, *i.e.*, those claims which Plaintiff pursues in his Motion for injunctive relief. First, the Court finds that CIHLLC is a required party under Rule 19(a) because "in [CIHLLC's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). As set forth above, CIHLLC is the party that has the duty under both the ULLCA and the Operating Agreement to provide its members access to its books and records. The Court cannot accord complete relief with the existing Defendants— the non-member manager, Defendant Chris Gayanich, and the non-manager member, Defendant David Gayanich. Thus, CIHLLC is a required party but its joinder is infeasible because it would destroy diversity jurisdiction.

Second, the Court examines the relevant factors under Rule 19(b) and finds that CIHLLC is an indispensable party. Any judgment rendered in CIHLLC's absence would be inadequate as

---

[10] Even in those situations where § 533 applies, the impediment to commencing or maintaining an action is not unsurmountable. Indeed, "in almost all actions commenced or maintained by a corporation which has not paid its annual franchise tax last due, the corporation should be allowed a reasonable time within which to become reinstated as a corporation in good standing before dismissal under § 533(a) will be ordered." *Holland Const., Inc. v. Kopko*, 2007 WL 4800151, at *1 (D.V.I. Dec. 10, 2007) (quoting *Maison La Crepe v. Hilbress Assocs.*, 1983 V.I. LEXIS 30, at *3 (Terr. Ct. Dec. 14, 1983)) (quotations omitted); *Grand Union Supermarkets of Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 2005 WL 17970, at *5 n.4 (D.V.I. Jan. 3, 2005).

it is CIHLLC—as opposed to the existing Defendants—from whom Plaintiff must seek relief. Any judgment against the existing Defendants without the joinder of CIHLLC would prejudice Defendants because they would be subject to duplicative judgments in any future suit against CIHLLC for the same relief. This prejudice cannot be avoided by shaping the relief or other measures. Finally, Plaintiff has an adequate alternative remedy in that he can pursue his books and records claims against CIHLLC and the existing Defendants in the Superior Court of the Virgin Islands. Thus, CIHLLC is indispensable to Plaintiff's Motion and "the action cannot go forward" without it. *Gen. Refractories Co.*, 500 F.3d at 312.

In sum, Plaintiff has failed "to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Indus. Elecs. Corp.*, 330 F.2d at 482. In particular, the Court finds that CIHLLC is an indispensable party to Plaintiff's books and records claims, whose joinder would destroy diversity jurisdiction. Thus, the Court will deny Plaintiff's Motion for injunctive relief.

### C.    Plaintiff's Second Amended Complaint

As noted above, Defendant David Gayanich filed his Motion to Dismiss on August 3, 2016, Plaintiff filed his Motion to Amend First Amended Complaint on August 4, 2016, and the Magistrate Judge granted Plaintiff's Motion to Amend on October 12, 2016. Because the Second Amended Complaint is now the operative pleading in this case, the Court will deny as moot Defendants' Motion to Dismiss. *See W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (stating that an amended complaint functions as the operative complaint and supersedes the prior complaint in its entirety); *see also Josse v. United States*, 2013 WL 152170, at *1 n.1 (D.V.I. Jan. 11, 2013) (denying as moot the defendant's motion to dismiss the first amended complaint after the plaintiff filed a second amended complaint).

Nonetheless, the Court will examine *sua sponte* the Second Amended Complaint to assure itself of its own subject matter jurisdiction. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. A necessary corollary is that the court can raise *sua sponte* subject-matter jurisdiction concerns.") (internal citation omitted). In this regard, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims for access to CIHLLC's books and records, CIHLLC's dissolution and winding up, and Plaintiff's claims based on the alleged diminished value of Plaintiff's investment in CIHLLC.

### 1.    Access to CIHLLC's Books and Records

The Court has set forth above why Plaintiff has failed to adequately establish at least a reasonable probability of success on the issue of this Court's jurisdiction to entertain his claim for access to CIHLLC's books and records. For the same reasons, the Court finds that CIHLLC is an indispensable party to Plaintiff's books and records claim; that the Plaintiff's books and records claim cannot go forward without it; and that if CIHLLC were a party to this action, diversity jurisdiction would be destroyed. Accordingly, the Court will dismiss Plaintiff's claim for books and records for lack of subject matter jurisdiction.

### 2.    CIHLLC's Dissolution and Winding Up

In the Second Amended Complaint, Plaintiff seeks "[d]issolution of [CIHLLC] pursuant to 13 V.I.C. § 1801" as well as "[j]udicial supervision of the winding up of [CIHLLC]." (Dkt. No. 46 at 9-10). Under 13 V.I.C. § 1801, upon the occurrence of any of several events, "[a] limited liability company is dissolved, and its business must be wound up."[11] In general, once the

---

[11] For example, a limited liability company is to be dissolved and its business wound up upon an event specified in the operating agreement; consent of a certain number or percentage of members; or on application by a member, upon entry of a judicial decree that, *inter alia*, another member has

dissolution process has been triggered, the limited liability company continues only to wind up its business, after which it can file articles of termination and terminate its existence. 13 V.I.C. §§ 1802, 1805.

In his Response to the Motion to Dismiss, Plaintiff argues that CIHLLC is not an indispensable party to his dissolution claim. (Dkt. No. 41 at 7). Plaintiff asserts that "an LLC is a passive player in dissolution when one looks at key provisions of the code such as 13 V.I.C. § 2101 and . . . 13 V.I.C. § 1410." (*Id.* at 9). Plaintiff further states: "Requiring an LLC to hire independent counsel, particularly when an LLC is being wound down between members who are in agreement, simply compounds costs with no foreseeable benefit. Where there is litigation between the members, the LLC itself has no separate interest outside of those of the parties who are already represented." (*Id.* at 9-10). The Court disagrees with Plaintiff and finds that, under the circumstances here, CIHLLC is an indispensable party to Plaintiff's dissolution and winding up claims.

As a preliminary matter, Plaintiff's citation to 13 V.I.C. § 1410 fails to support his position. As noted above, under § 1410, a member of a limited liability company "may maintain an action against a limited liability company or another member for legal or equitable relief" to enforce the member's rights under both the operating agreement and the ULLCA, as well as "the interests of the member, including rights and interests arising independently of the member's relationship to the company." 13 V.I.C. § 1410. While § 1410 allows Plaintiff to bring suit against CIHLLC and its other members, Plaintiff fails to explain how this statute allows him to bring suit to dissolve CIHLLC *without suing CIHLLC*.

---

engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member." 18 V.I.C. § 1801.

As to § 2101, which enables members to bring derivative actions, Plaintiff directs the Court's attention to the case of *Cameron v. Rohn*, 2012 WL 278711 (D.V.I. Jan. 30, 2012). In *Cameron*, a former employee and member of a limited liability company brought suit against the limited liability company, Attorney Rohn, who was the limited liability company's member, and other entities controlled by Attorney Rohn. *Id.* at *1. The plaintiff sought to disqualify Attorney Rohn from representing both herself and the co-defendant limited liability company in the suit, arguing that Attorney Rohn's representation of herself and the limited liability company would create a conflict of interest. *Id.* The Court rejected the plaintiff's argument that the limited liability company had interests independent of its member Attorney Rohn and held that "there is no concurrent conflict" created by Attorney Rohn's representation. *Id.* at *4. The Court went on to note, however, that there were no allegations that the limited liability company misappropriated funds or engaged in other acts that would "almost certainly" warrant disqualification "due to the fact that [the limited liability company] would be in a situation to cross-claim against one of the Rohn-controlled Defendants." *Id.*

The Court finds the *Cameron* case to be distinguishable from the instant case and unpersuasive as to Plaintiff's position. First, in *Cameron*, the limited liability company subject to the dissolution claim was itself a party to the litigation, together with its members. *Id.* Thus, the issue of whether a limited liability company is an indispensable party in a suit seeking its dissolution was never presented to the Court.

Moreover, the Court in *Cameron* recognized that there are situations in which the interests of a limited liability company and its members would be such that joint representation would "almost certainly" be precluded—in other words, where the limited liability company may have interests independent of its co-defendant members. *Id.* Such a situation is undeniably present here,

where Plaintiff alleges that Defendant David Gayanich and Defendant Chris Gayanich "acted in a grossly negligent manner" in the operation of CIHLLC's assets thereby diminishing the value of Plaintiff's ownership interest in CIHLLC. (Dkt. No. 46 at 9). As set forth more fully below, Plaintiff's claim that Defendants negligently diminished the value of CIHLLC's assets is derivative in nature in that Plaintiff is fundamentally seeking to enforce the *limited liability company's* rights against Defendant David Gayanich and Defendant Chris Gayanich. Under such circumstances, CIHLLC must be added as a required party. *See Abdallah v. Abdel-Rahman*, 2015 V.I. LEXIS 102, *16 (V.I. Super. Ct. Aug. 20, 2015) ("since the Court has determined that a derivative suit is appropriate, [the limited liability company] must be added as a required party in that without them, the court cannot accord complete relief to the existing parties").

Further, to the extent that the Court in *Cameron* suggests to the contrary, this Court does not agree with the blanket proposition that "an LLC does not have an independent interest apart from its members' in perpetuating its existence or enforcing its rights." *Cameron*, 2012 WL 278711 at *4. Courts in the Virgin Islands have recognized that—because limited liability companies have interests separate from those of their members—under certain circumstances a limited liability company might be a required party to litigation in which its interests are affected. *See Arvidson v. Buchar*, 2017 V.I. LEXIS 21, *7 (V.I. Super. Ct. Feb. 2, 2017) (noting that in a suit between the limited liability company's members and manager in which a claim for contribution is raised, the "[limited liability company] has an interest in the action and must be added as a required party since the Court will be unable to accord complete relief without the company as a party"); *Abdallah*, 2015 V.I. LEXIS 102 at *16. In addition, the ULLCA expressly states that "[a] limited liability company is a legal entity distinct from its members." 13 V.I.C. § 1201.

21

Finally, there is authority in other jurisdictions that supports the Court's conclusion under the circumstances here that CIHLLC is an indispensable party. *See, e.g.*, *Masters v. Harkleroad*, 303 F. App'x 859, 861 (11th Cir. 2008) (rejecting argument that limited liability companies were simply nominal parties where the plaintiffs "s[ought] to enjoin the LLCs from engaging in further business, appoint a receiver for the LLCs, dissolve the LLCs, and distribute their assets"); *S. La. Ethanol, LLC v. CHS-SLE Land, LLC*, 2012 WL 208828, at *2 (E.D. La. Jan. 23, 2012) (holding that an LLC was an indispensable party where title to real property was held by the limited liability company and the action sought to dissolve the limited liability company and distribute its assets to the two members); *Weber v. King*, 110 F. Supp. 2d 124, 130 (E.D.N.Y. 2000).

The Court finds the case of *Weber v. King*, 110 F. Supp. 2d 124, 130 (E.D.N.Y. 2000) to be particularly instructive. In *Weber*, the court concluded that the limited liability company at issue was a necessary party under Rule 19(a) because "it is an interested party in this action and is 'so situated that the disposition of the action in the [LLC's] absence may (i) as a practical matter impair or impede [its] ability to protect that interest.'" *Weber*, 110 F. Supp. at 127–28 (quoting Rule 19(a)). The court in *Weber* reasoned that the presence of all of the limited liability company's members was insufficient to protect the interests of the limited liability company, which is a separate legal entity with rights and obligations "which are separate and distinct from those of its members." *Id.* at 128. Of note, the court examined the fallout if, pursuant to the judicial proceedings, the limited liability company was dissolved:

> For example, were the Company to be dissolved, creditors of the Company would hold an equitable interest in its assets that may compete with the interest held by Plaintiffs. Because the creditors' claims would not be able to reach the members personally, Plaintiffs cannot represent the interests of the Company in determining the validity of the creditors' claims.

*Id.* The court went on to note that "the fact that all members of the Company are before the Court is insufficient to assure adequate representation of the Company's interests where, as here, the members are in conflict." *Id.*[12]

Once the court in *Weber* determined that the limited liability company was a necessary party under Rule 19(a), it went on to conclude that under Rule 19(b), the limited liability company was also an indispensable party. Examining the extent to which a judgment rendered in the limited liability company's absence might result in prejudice to the limited liability company, the court found that the interests of the limited liability company "are significantly impacted by the [p]laintiffs' claims." *Id.* at 129. The court noted that the plaintiffs' alleged harm included damage to the business of the limited liability company, a decline in the limited liability company's revenues, and thwarting the limited liability company from selling one of its main assets. *Id.* The court reasoned that "[b]ecause the protection of the [limited liability company's] interests lie at the core of this action and, as stated above, none of the parties before the Court can adequately represent the [limited liability company's] interests, the [limited liability company] would be prejudiced if this action were to proceed without joinder." *Id.* at 130. The court in *Weber* went on

---

[12] In a similar holding, the court in *South Louisiana Ethanol, LLC* held that a limited liability company that the plaintiff sought to dissolve was not a nominal party, observing the following:

> The LLC owns the land at issue because the land is titled in the name of the LLC. The relief sought via the adversary proceeding will eviscerate the LLC and divest it of its ownership of the property. Even though the LLC owns the property at issue for the members, an LLC is not the equivalent of a mere depositary or stakeholder. Under Louisiana law the LLC is a juridical person with a separate legal existence from the members who comprise the entity. It is the two diverse members who are at odds with each other but these parties are not liable to each other and neither has title to the land owned by the LLC. [The LLC] is a real party in interest to this controversy notwithstanding that the entity will be a passive party in the case.

*S. La. Ethanol, LLC*, 2012 WL 208828, at *2. Similarly, under Virgin Islands laws, "[a] limited liability company is a legal entity distinct from its members." 13 V.I.C. § 1201.

to find that a judgment without the limited liability company would possibly subject the defendants "to multiple potentially inconsistent verdicts" because the limited liability company could later "bring a separate suit against [the defendants] on many of the same claims." *Id.* The court further found that, if the action were dismissed, the plaintiffs would "still have an adequate remedy" as they could pursue their action in state court. *Id.*

As in *Weber*, the applicable Virgin Islands statutory provisions hold that the limited liability company is a separate legal entity, with legal rights and obligations that are distinct from those of its members. 13 V.I.C. § 1201. Through its ownership and operation of Chenay Bay Resorts, CIHLLC appears to hold several rights and obligations with respect to third parties.[13] However, because Plaintiff is not personally liable to CIHLLC's creditors and does not hold title to CIHLLC's assets, Plaintiff's interests are distinct from CIHLLC's interests. Moreover, Plaintiff's assertion that CIHLLC "is a passive player in [its own] dissolution" (Dkt. No. 41 at 9) rings particularly hollow here where CIHLLC's members not only dispute whether CIHLLC should be dissolved but also dispute who the true members of CIHLLC are. (*Compare* Dkt. No. 46 at 2 (Plaintiff alleging that George Secchiaroli received a 10% membership interest in CIHLLC and Defendant David Gayanich and Plaintiff each receiving a 45% membership interest) *with* Dkt. Nos. 48, 49 at 2 (denying that George Secchiaroli ever received a 10% membership interest and asserting that Defendant David Gayanich never owned less than a 50% membership interest)).[14]

---

[13] For example, CIHLLC leases the hotel restaurant to another entity (*see* Dkt. Nos. 18-1, 18-11); operates a timeshare program in which it works with various timeshare owners (*see* Dkt. No. 18 at 4); and must make mortgage payments on the hotel that it owns (*see* Dkt. No. 46 at 6-7).

[14] Also similar to *Weber*, Plaintiff here is pursuing damages for a decline in the value of CIHLLC, such as damage to CIHLLC's business. Plaintiff asserts that Defendant Chris Gayanich "closed down the time share operations of the hotel," which "makes a majority of the income of the hotel." (Dkt. No. 46 at 5). Plaintiff also asserts that Defendants thwarted CIHLLC from selling its main asset—the hotel. (*Id.* at 5-6). As discussed more below, these claims are derivative in nature in that

Thus, the Court finds that under the Rule 19 analysis, CIHLLC is an indispensable party to Plaintiff's claim for dissolution and winding up. First, the Court finds that CIHLLC is a required party under Rule 19(a) because it is an interested party in the dissolution action and is so situated that disposing of the action in CIHLLC's absence may "as a practical matter impair or impede [CIHLLC's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B). As explained earlier, CIHLLC is a distinct legal entity with legal rights and obligations separate from those of its members. Unless it is a party, any action to dissolve CIHLLC and wind up its operations would directly impact CIHLLC's ability to manage and protect its legal rights and obligations.

Secondly, the Court finds that CIHLLC is also an indispensable party under the relevant factors set forth in Rule 19(b). As noted earlier, CIHLLC's ownership of an operating hotel entails rights and obligations for which the current parties to the action are not personally liable. Judgment in any dissolution and winding up action might prejudice CIHLLC because it would be unable to protect its interests in these ongoing rights and obligations. It would be difficult to lessen such prejudice by protective provisions in the judgment or shaping of relief because none of the existing parties could fully represent CIHLLC's separate interests. This is especially true here given that the members that are present (Plaintiff and Defendant David Gayanich) are adverse to each other, the existence of a third member (George Secchiaroli) is disputed, and George Secchiaroli is not even a party to the action. *See Weber*, 110 F. Supp. at 128. Finally, Plaintiff has an adequate alternative remedy in that he can pursue his dissolution and winding up claim against CIHLLC and the existing Defendants in the local Superior Court.

---

they are geared toward protecting the interests of *CIHLLC* and, thus also require CIHLLC's joinder.

For the foregoing reasons, the Court finds that CIHLLC is an indispensable party to Plaintiff's claims for the dissolution and winding up of CIHLLC and that the Court, therefore, lacks subject matter jurisdiction over those claims.

### 3.    Claims Based on Alleged Diminished Value of Ownership Interest

Plaintiff also raises claims regarding the alleged diminished value of his investment in CIHLLC. The Court finds that any such damages are derivative in nature and, thus, cannot proceed without the presence of CIHLLC.

When a shareholder brings a derivative claim on behalf of a limited liability company, the limited liability company will typically be an indispensable party. *See e.g.*, *Trident-Allied Assocs., LLC. v. Cypress Creek Assocs., LLC.*, 317 F. Supp. 2d 752, 754 (E.D. Mich. 2004) (observing that "other courts have held that where members of an LLC bring claims derivatively on behalf of the company, the company is an indispensable party. . . . even where all the members [of the LLC] are before the Court"); *Weber*, 110 F. Supp. 2d at 133 (holding that "because Plaintiffs bring these claims derivatively on behalf of the [limited liability company], the [limited liability company] is an indispensable party and the inability to join it as a party requires the dismissal of this action"); *see also Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (examining derivative claims in the corporate setting and observing that "[t]he claim pressed by the stockholder against directors or third parties is not his own but the corporation's" and that in such a case, "[t]he corporation is a necessary party to the action; without it the case cannot proceed"). The Virgin Islands Superior Court followed this general rule in *Abdallah v. Abdel-Rahman*, 2015 V.I. LEXIS 102 (V.I. Super. Ct. Aug. 20, 2015) in holding that "since the Court has determined that a derivative suit is appropriate, [the limited liability company] must be added as a required party in that without them, the court cannot accord complete relief to the existing parties." *Id.* at *16. The logic that a limited liability company is a required party in a derivative suit is especially clear given that "[i]f a derivative action for a

26

limited liability company is successful, any resulting award after expenses belongs to the LLC." *Id.* at *15.

Whether an action is derivative in nature "depends on whether the harm alleged by the plaintiff is independent of harm suffered by the LLC itself." *Cameron v. Rohn*, 2012 U.S. Dist. LEXIS 18986, at *18 (D.V.I. Feb. 14, 2012) (quoting *HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1194 (3d Cir. 1996)) (brackets and quotations omitted).[15] For example, in *Cameron*, the court "ha[d] no problem in concluding" that allegations that a member of a limited liability company converted some of the company's assets were derivative in nature. *Id.* In so holding, the court in *Cameron* noted that the alleged harm "ran primarily to the LLC . . . [and] ran to the Plaintiffs only indirectly" and that "because the property that is alleged to have been illegally converted was owned by the [limited liability company] and not by the Plaintiffs, [the conversion] claim must have been brought as a derivative claim." *Id.* at *18-19; *see also Bartfield v. Murphy*, 578 F. Supp. 2d 638, 647 (S.D.N.Y. 2008) (noting that where a plaintiff's "injury and claim for relief only accrues because he had an interest in [the limited liability company,]" and is dependent on his status as a shareholder and investor, the claims are derivative in nature) (emphasis removed).

Here, Plaintiff's claims that the value of his investment in CIHLLC has decreased due to mismanagement allege harm that directly impacts CIHLLC but only indirectly impacts Plaintiff as a member of CIHLLC. Accordingly, such claims are derivative and cannot proceed without CIHLLC. For example, Plaintiff asserts that "Chris Gayanich and David Gayanich have conspired to not make the mortgage payments and intend to attempt to foreclose on the hotel" (*id.* at ¶ 45);

---

[15] Derivative actions are expressly provided for by statute in the Virgin Islands. Under 13 V.I.C. § 2101, "[a] member of a limited liability company may maintain an action in the right of the company if the members or managers having authority to do so have refused to commence the action or an effort to cause those members or managers to commence the action is not likely to succeed." *Id.*

"Chris Gayanich . . . has shut down the time share activity of the hotel costing the LLC hundreds of thousands of dollars" (*id.* at ¶ 46); and "[a]s a result of the actions and inaction of the Defendants . . . the hotel has lost value and income" (*id.* at ¶ 57). The alleged harm in these assertions *directly* impacts the assets of CIHLLC. Plaintiff does not own these assets. Plaintiff is harmed *indirectly* through his membership interest and investment in CIHLLC if the hotel loses money or if the bank forecloses on its mortgage. Thus, Plaintiff's claim for damages based on such harm is derivative and any resulting awards after expenses belong to CIHLLC.

Accordingly, the Court finds that under the Rule 19 analysis, CIHLLC is an indispensable party to Plaintiff's claim for derivative damages. First, the Court finds that CIHLLC is a required party under Rule 19(a) because "in [CIHLLC's] absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). As set forth above, in derivative claims, the alleged harm runs to the limited liability company and it is the limited liability company that is entitled to any award. *See Abdallah*, 2015 V.I. LEXIS 102 at *15-16. Here, the party who would be entitled to any damages based on Plaintiff's derivative damages claims—CIHLLC—is not a party. Without CIHLLC, the Court cannot accord complete relief.

Second, the Court finds that CIHLLC is also an indispensable party under the relevant factors set forth in Rule 19(b). A judgment in the current action under Plaintiff's derivative damage claims might prejudice CIHLLC because CIHLLC would be unable to recover any award of damages. Additionally, proceeding with any derivative action in CIHLLC's absence would also prejudice the current Defendants because they would be subject to duplicative judgments in any future suit brought by CIHLLC on the same claims. This prejudice cannot be avoided by shaping the relief or other measures. Finally, as stated above, Plaintiff has an adequate alternative remedy of pursuing his derivative claims in the local Superior Court.

Accordingly, the Court finds that CIHLLC is an indispensable party to Plaintiff's derivative claims and that the Court thus lacks subject matter jurisdiction over those claims.

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction (Dkt. No. 18). In addition, given that Plaintiff's Second Amended Complaint is the operative complaint, the Court will deny as moot Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt. Nos. 32, 40), which was filed prior to the Second Amended Complaint. Finally, the Court will dismiss *sua sponte* those claims in the Second Amended Complaint over which the Court lacks subject matter jurisdiction. Specifically, Plaintiff's claim for access to CIHLLC's books and records, Plaintiff's claim to dissolve CIHLLC and wind up its operations, and all of Plaintiff's claims based on the alleged diminished value of Plaintiff's investment in CIHLLC.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 19, 2017                    _____/s/_____
                                         WILMA A. LEWIS
                                         Chief Judge